7279

## WATSON v. PASCHALL & CO.

1. CONTRACT—NONSUIT—ISSUES.—Whether the minds of contracting parties met in reference to a timber deal, under the evidence here, depends on the fact whether a certain telegram was in response to a phone message or a telegram, and as this issue could only be determined by the jury nonsuit was improperly granted.
2. IBID.—TELEGRAPH COMPANIES.—In the telegram, "We accepted Mr. Stevenson's offer. If he declines to stand up, we can do no more business with him," the word "accepted" is used in the sense of "accept;" "if he declines to stand up" means the sender had not declined to stand up, and "we can do no more business with him" manifest an intention to complete the negotiations then pending.

Before ——————, Chesterfield, November term, 1908. Reversed.

Action by E. T. Watson against Paschall & Company. From order of nonsuit, plaintiff appeals.

*Messrs. Stevenson & Matheson,* for appellant, cite: *Broker entitled to commissions:* 4 Ency., 975; 44 S. C.,

358; 204 U. S., 238. *Telegraph company is agent of sender:* 77 Mo., 672; 71 Ga., 760.

*Messrs. R. T. Gaston* and *Edward McIver,* contra, cite: *When broker's commissions are earned:* 22 Ohio, 69; 71 Ga., 608; 33 Mow. Pr., 440; 52 Neb., 440.

August 14, 1909.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an appeal from an order of nonsuit.

On the 21st of February, 1905, the plaintiff and the defendants entered into an agreement, the terms of which were embodied in the following letter:

"Mr. J. R. Paschall, Charleston, W. Va.:

"I hereby agree with you to accept five thousand (5,000) dollars' commissions, for the sale of your timber to Holley & Stephenson, or to any others who may hold under them, in any deal which you may make with Holley & Stephenson; the same to be paid twenty-five hundred dollars out of first cash payment and twenty-five hundred dollars out of the second payment.   -          E. T. WATSON."

On the 21st of February, 1908, Holley & Stephenson made the following offer to the defendants:

"Gentlemen: We will pay ninety thousand ($90,000) dollars for the timber covered by your option dated 22d of December, 1904, to the undersigned, Holley & Stephenson, and also the timber on the McNair, Covington, Delaney, Ingram, Douglass, Ellerbe, Campbell and Frost tracts, adjoining the tracts mentioned in said option. * * * "

The option dated the 23d of December, 1904, related to lands owned by the defendants, while the offer not only embraced those lands but adjoining lands of the parties therein mentioned.

In order to induce Holley & Stephenson to accept the said option the defendants had stated that they would undertake to buy said additional lands, at a price not exceeding five thousand dollars, and would let Holley & Stephenson have them at the price paid for them. They stated that they were satisfied they could accomplish this result, as the adjoining lands were under their control.

The defendants rejected this offer.

On the 22d of February Paschall, a member of the firm of Paschall & Co., telegraphed to Watson, the plaintiff, that "if offer has not been accepted, withdraw same and return all papers. Answer here at once."

Watson replied on the same day as follows: "Stephenson renews his offer. Think better accept. Says will let stand to first of month. Advise."

Paschall immediately telegraphed: "Will not accept less than ninety thousand net to us."

Watson wrote a letter on 24th of February, stating that if the defendants would accept ninety thousand dollars including his commissions he thought there was a probability of negotiating the sale.

Paschall replied by telegram as follows, on the 27th of February: "Yours received. Want you to have your commissions, but Roberts & Gresham expected, from my wire to them, one hundred, which would have been ninety net. Answer immediately whether your people accept or not."

Watson immediately replied: "Stephenson will not increase offer. Preparing to send to examine other property. Think best to accept."

On the 28th of February Watson telegraphed Paschall: "Stephenson will give ninety thousand, including additional tracts; offer subject to immediate acceptance. Can't raise him a penny."

The message which Watson received on the same day was: "We accept Stephenson's offer. If he declines to stand up we can do no more business with him."

When the parties met, for the purpose of completing the negotiations, the defendants refused to convey the lands, for reasons which will be hereinafter stated.

At the conclusion of the plaintiff's testimony the defendants made a motion for a nonsuit, on the following grounds:

1st. "That the plaintiff has failed to prove that any binding completed contract of sale has ever been made between the defendants and the proposed purchaser, but, on the contrary, has proven that the minds of the parties never met, on at least two essential elements of the alleged sale; and that under the law and facts as proved, the plaintiff was not entitled to his commissions until a contract of sale is fully perfected in all its material elements.

2d. "The testimony shows that the plaintiff, as a broker, has not acted toward his principal in that good faith which under the law would entitle him to his commissions."

In granting the order of nonsuit, his Honor, the presiding Judge, said:

"My conclusion is this: I believe that the plaintiff was warranted in believing that he had effected a sale, but I do not think it was in such shape at that time to bind the defendants, and when they met for the purpose of consummating the sale, and when they found the purchaser was not to get what he contemplated he was going to get, and the seller was not selling what he contemplated selling, and this is brought out by the plaintiff's own testimony, and the plaintiff in his own evidence says that the sale was not consummated, and he was not entitled to his commissions until it was consummated, and for that reason I grant the order of nonsuit."

If there was no other testimony to be considered it would plainly appear that his Honor, the presiding Judge, erred in refusing to submit the case to the jury. When, however, the parties met for the purpose of carrying into effect

24—83

the offer mentioned in the telegram, from Watson to Paschall, dated the 28th of February, the defendants refused to comply, on two grounds.

The first was, that their telegram dated the 28th of February, referred to the offer that Watson had made early in the morning of that day, over the phone, for the timber belonging to them; and that they had not, at any time, offered to sell the eight additional tracts, which they did not own and had never claimed.

The plaintiff thus testifies as to the offer over the phone: "A. On the morning of the 28th Mr. Paschall called me over telephone and asked me what the situation was. Q. What time in the morning? A. Some time about nine o'clock in the morning, and I told him that so far as I could see there was no change, and he asked me what my people would give, and I said I think they will give ninety thousand for the timber under option, and he said well sell it to them, and I said I will go and see Stephenson and see what he will do, and Mr. Paschall went on to say that he was the only one of the three partners that wanted to sell the timber and he had been asking $95,000 because $90,000, including my commissioners, would make $95,000 to Stephenson and Holley, and he said he was willing to stand the loss of $5,000 himself, and I asked where I should call him when I saw Stephenson, and he said wire him at Warrenville. I went and offered Stephenson the timber for ninety thousand dollars and he refused to accept it. Q. State whether or not Mr. Stephenson accepted? A. Mr. Stephenson refused to accept the proposition, and I returned to my office. It was some time later in the day, after I talked to Mr. Paschall, before I got to see Mr. Stephenson, and I went back and sent a wire to Mr. Paschall."

The following is the copy of the message which he sent to Paschall: "Stephenson will give ninety thousand for timber including additional tracts. Offer subject to immediate acceptance. Can't raise him a penny." This message was

sent at 5:20 p. m. of that day, and at 8:53 p. m. Paschall sent a message, which when received read: "We accept Mr. Stephenson's offer. If he declines to stand up we can do no more business with him."

The question whether the telegram sent by Paschall to Watson was in reply to the phone offer, on the morning of the 28th of February, or to the telegram sent by Watson to Paschall at 5:20 p. m. on that day raised an issue of fact, which could only be determined by the jury.

The next question upon which the defendants refused to comply was, because the message which they sent, at 8:58 p. m., on the 28th of February, was not transmitted correctly; that the word was not "accept" but "accepted" in the original message, and read: "We accepted Mr. Stephenson's offer. If he declines to stand up, we can do no more business with him."

The context of the telegram shows that the word "accepted" was used in the sense of "accept." The words "if *he* declines to stand up," show that they had not "declined to stand up," otherwise those words were useless, as Holley & Stephenson would not have been afforded an opportunity of saying whether they would decline "to stand up" or not. And the words, "we can do *no more* business with him," manifest an intention on the part of the defendants to complete the negotiations then pending.

There is not a single expression in the telegram tending to show that the defendants declined the offer made by Holley & Stephenson; as the use of the past tense by the party to be bound means that he now does what he says he already had done. *Toale* v. *Tel. Co.*, 83 S. C., 41.

Furthermore, Holley & Stephenson only made one offer.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.